UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE MEZA-HERNANDEZ,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>D. MARIN et al.,<br><br>　　　　Respondents. | Case No. 5:26-cv-00813-MCS-JDE<br><br>**ORDER RE: MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (ECF NO. 2)** |

　　Petitioner Jose Meza-Hernandez, a self-represented litigant, brings this action for a writ of habeas corpus. (Pet., ECF No. 1.) Petitioner filed an ex parte motion for a temporary restraining order and preliminary injunction. (Mot., ECF No. 2.) The Court ordered briefing on the application. (Order Setting Br. Schedule, ECF No. 6.) Respondents David Marin, in his official capacity as Warden of the Adelanto Detention Facility; Thomas P. Giles, in his official capacity as Director of the Los Angeles Field Office of U.S. Immigration and Customs Enforcement ("ICE"); Todd Lyons, in his official capacity as Acting Director of ICE; Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security; and Pamela Bondi, in her official capacity as Attorney General, filed a brief opposing the application. (Opp'n, ECF No. 8.)

1

The Court previously notified the parties that absent further order, it would consider the motion on the papers without further briefing or oral argument. (Order Setting Br. Schedule 2.) For the reasons discussed herein, the Court grants in substantial part Petitioner's motion for a preliminary injunction.

I.  **BACKGROUND**

In light of Petitioner's pro se status, the Court liberally construes the petition and application materials. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). According to the petition and motion materials, Petitioner is a citizen of Mexico who has lived in the United States since 2001. (Pet. ¶¶ 30–31.) Respondents submit that Petitioner was convicted of assault in April 2007 and driving without a license in August 2009. (Opp'n Ex. 1, at 2–3, ECF No. 8-1.)[1] Petitioner spent August 2009 to April 2010 in immigration detention. (Opp'n Ex. 5, at 1–2, ECF No. 8-5.) On April 30, 2010, Petitioner was released pursuant to an Order of Supervision after an immigration judge granted him a withholding of removal. (*Id.* at 1; Pet. ¶¶ 33–34.) For the next 15 years, Petitioner remained free from detention under the Order of Supervision. (Pet. ¶¶ 4–6.) Petitioner submits that throughout this period, he complied with his yearly reporting requirements, did not break any laws, and worked and paid taxes. (*Id.* ¶¶ 11–13.) On December 10, 2025, ICE re-detained Petitioner and transported him to Adelanto Detention Center, where he currently remains. (*Id.* ¶¶ 2, 20.)

Petitioner raises seven grounds for habeas relief: (1) violation of his Fifth Amendment right to substantive due process; (2) violation of his Fifth Amendment right to procedural due process; (3)–(5) violations of the Administrative Procedure Act; (6) unlawful ultra vires action; and (7) violation of the doctrine stated in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). (*Id.* ¶¶ 60–105.) Petitioner seeks

---

[1] The exhibits Respondents attached to their brief are not authenticated. Fed. R. Evid. 901; *see* C.D. Cal. R. 7-6. The Court considers them solely for the purpose of argument.

a temporary restraining order and preliminary injunction requiring Respondents to immediately release him and enjoining Respondents from removing Petitioner to a third country without travel documents, acceptance by the third country, and notice to Petitioner and an opportunity for him to respond to and contest the removal. (Mot. 15.) The Court issued an order prohibiting Respondents from relocating Petitioner outside the district while the instant motion is pending. (Order Setting Br. Schedule 3.)

## II. LEGAL STANDARD

The standards governing temporary restraining orders and preliminary injunctions are essentially the same. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The Ninth Circuit also employs a "version of the sliding scale approach" where "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, an injunction may issue if the plaintiff shows that serious questions go to the merits, the balance of hardships tips sharply toward the plaintiff, the plaintiff is likely to suffer irreparable injury, and an injunction is in the public interest. *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021).

## III. DISCUSSION

The Court has jurisdiction to consider Petitioner's claims under 28 U.S.C. § 2241. *See Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) (en banc) ("The writ of habeas corpus historically provides a remedy to non-citizens challenging executive detention."). Respondents argue that 8 U.S.C. § 1252(b)(9) and (g) strip the

Court of power to review the petition. (Opp'n 4–8.) For the reasons persuasively and repeatedly articulated in decisions of courts in this circuit, 8 U.S.C. § 1252(b)(9) and (g) do not divest the Court of jurisdiction to consider a claim for relief grounded on a base "distinct from how the government's prosecutorial discretion was deployed" in commencing proceedings, adjudicating cases, or executing removal orders. *Doe v. Noem*, 781 F. Supp. 3d 1055, 1069 (E.D. Cal. 2025) (collecting cases); *see also, e.g.*, *Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) ("[Section § 1252(g)] applies only to three discrete actions that the Attorney General may take: her decision or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders. Instead of sweeping in any claim that can technically be said to arise from the three listed actions, the provision refers to just those three specific actions themselves." (cleaned up)); *C.A.R.V. v. Wofford*, No. 1:25-CV-01395 JLT SKO, 2025 U.S. Dist. LEXIS 216277, at *20 (E.D. Cal. Nov. 1, 2025) (asserting jurisdiction notwithstanding § 1252(g) where "there is no removal order at issue here and the central issue is Petitioner's continued detention" after termination of release); *Vasquez Juarez v. Noem*, No. 5:25-cv-02972-RGK-JC, 2025 U.S. Dist. LEXIS 230912, at *5–6 (C.D. Cal. Nov. 21, 2025) (analogizing *Jennings v. Rodriguez*, 583 U.S. 281 (2018), to reject respondents' argument that § 1252(b)(9) barred review of habeas petition).

### A.     Likelihood of Success on the Merits

Petitioner is likely to succeed on the merits of his Fifth Amendment procedural due process claim. (Pet. ¶¶ 65–70; Mot. 9–10.)[2]

---

[2] The Court does not opine on Petitioner's likelihood of success on the merits of his other claims. Regarding Petitioner's request for an order enjoining Respondents from removing him to a third country without travel documents, acceptance by the third country, and notice and an opportunity to be heard, the Court concludes that granting Petitioner injunctive relief on this ground would be premature. No third country has been identified, and Petitioner's potential removal is speculative. *See, e.g.*, *Morales Sanchez v. Bondi*, No. 5:25-cv-02530-AB-DTB, 2025 U.S. Dist. LEXIS 196639, at *10

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases).

In *Morrissey v. Brewer*, the Supreme Court recognized that the decision to release a criminal defendant from custody on parole creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit consistently recognize that this principle extends to individuals subject to removal proceedings; "[j]ust as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond." *Hernan Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *accord Garro Pinchi*, 792 F.

---

(C.D. Cal. Oct. 3, 2025) (denying temporary restraining order where "Petitioner's fear of being removed to [an unidentified] third country" was "speculative and not ripe for adjudication"); *Cabrera-Trillo v. Noem*, No. 3:25-cv-02865-CAB-MSB, 2025 U.S. Dist. LEXIS 227020, at *8–9 (S.D. Cal. Nov. 18, 2025) (denying as premature temporary restraining order where possible third country of removal was unidentified). Accordingly, the Court denies Petitioner's requested relief on this issue without prejudice to renewal should circumstances change.

Supp. 3d at 1032 (collecting cases for the proposition that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody").

Generally, the Due Process Clause "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). To determine what procedures are constitutionally sufficient to protect a liberty interest, courts apply the three-part test established in *Mathews v. Eldridge*:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335 (1976); *see Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying *Mathews* to due process challenge to immigration detention, noting that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); *Fernández López v. Wofford*, No. 1:25-cv-01226-KES-SKO (HC), 2025 U.S. Dist. LEXIS 205596, at *17 (E.D. Cal. Oct. 17, 2025) (collecting cases extending *Mathews* "to the context of immigration detention").

Here, Petitioner is subject to a final removal order, (*see* Opp'n Ex. 4, ECF No. 8-4), but he was released pursuant to an Order of Supervision in 2010, (Pet. ¶ 34). As a result, Petitioner has lived out of custody for 15 years. During that period, Petitioner submits that he has worked steadily and paid taxes. (*Id.* ¶ 13.) Due process protects Petitioner's liberty interest in remaining out of custody.

///

1 Under *Mathews*, Petitioner should have been afforded a pre-detention hearing.
2 First, Petitioner has a substantial private interest in remaining in his home, working, and
3 participating in the community, out of custody. *Cf., e.g.*, *C.A.R.V.*, 2025 U.S. Dist.
4 LEXIS 216277, at *26–27 ("As to private interest, during his approximately four years
5 on parole, C.A.R.V. obtained permission to work, pursued gainful employment, and
6 built a relationship with his fiancé and many others in his community. . . . Petitioner has
7 a substantial private interest in being out of custody and his detention denies him that
8 liberty interest."); *Garro Pinchi*, 792 F. Supp. 3d at 1034 ("Ms. Garro Pinchi justifiably
9 relied on the government's implied promise in obtaining employment, taking on
10 financial responsibility for her family members, and developing community
11 relationships. The more than two years that she has spent out of custody since ICE
12 initially released her have only heightened her liberty interest in remaining out of
13 detention."); *Fernández López*, 2025 U.S. Dist. LEXIS 205596, at *15 ("Petitioner had
14 been out of custody for nearly four years, and during that time, began a life in the United
15 States, living with her partner and complying with the terms of her release. Her
16 detention denies her that freedom.").

17 On the second *Mathews* factor, Respondents argue that Petitioner was afforded
18 adequate process because he received a Notice of Revocation and an informal interview
19 when he was re-detained on December 10, 2025. (Opp'n 3–4.) When the government
20 revokes release, the noncitizen must "be notified of the reasons for revocation of his or
21 her release" and "promptly" receive an "initial informal interview." 8 C.F.R.
22 § 241.13(i)(3). "Conclusory assertions that a detainee can be removed from the United
23 States are insufficient to meet the notice and opportunity to be heard requirements of
24 the U.S. Constitution and the governing regulations promulgated by Respondents'
25 agencies." *Majd v. LaRose*, No. 26-cv-0245-JES-BLM, 2026 U.S. Dist. LEXIS 12985,
26 at *6 (S.D. Cal. Jan. 22, 2026); *see also J.L.R.P. v. Wofford*, No. 1:25-cv-01464-KES-
27 SKO (HC), 2025 U.S. Dist. LEXIS 224967, at *19 (E.D. Cal. Nov. 14, 2025)
28 (concluding that petitioner lacked meaningful notice where "the notice of revocation of

1  release did not provide any specific changed circumstance applicable to petitioner").

2  Here, the Notice of Revocation informed Petitioner that there were "changed
3  circumstances" in his case and that "ICE has determined there is a significant likelihood
4  of removal in the reasonably foreseeable future." (Opp'n Ex. 2, at 1, ECF No. 8-2.) The
5  Notice of Revocation did not identify any changed circumstances that were specific to
6  Petitioner, nor did it explain why Petitioner's release was being revoked. In addition,
7  Petitioner submits that ICE has not developed a departure plan or instructed him to
8  begin the process of requesting travel documents to any country, (Pet. ¶ 15), making it
9  unclear what "changed circumstances" the notice refers to, *cf. Perez-Escobar v. Moniz*,
10 792 F. Supp. 3d 224, 226 (D. Mass. 2025) ("The absence of any such explanation [of
11 changed circumstances] is especially concerning because Petitioner has still not
12 received a reasonable fear interview more than six years after his removal order was
13 reinstated."). Under these circumstances, the Notice of Revocation and informal
14 interview Petitioner received were inadequate to give him meaningful notice of why his
15 Order of Supervision was being revoked and ensure that he was not erroneously
16 deprived of his liberty.

17 Finally, as many other courts have recognized, there is no meaningful
18 countervailing government interest that supports detaining previously paroled
19 noncitizens like petitioner without a pre-detention hearing. *See, e.g.*, *Fernández López*,
20 2025 U.S. Dist. LEXIS 205596, at *16 ("In immigration court, custody hearings are
21 routine and impose a minimal cost. If the government wishes to re-arrest petitioner at
22 any point, it has the power to take steps toward doing so; but its interest in doing so
23 without a hearing is low." (cleaned up)); *Garro Pinchi*, 792 F. Supp. 3d at 1036 ("[D]ue
24 process requires the government to identify some interest beyond its own administrative
25 practices to justify depriving an individual of her liberty without any pre-deprivation
26 protections. Detention for its own sake, to meet an administrative quota, or because the
27 government has not yet established constitutionally required pre-detention procedures
28 is not a legitimate government interest."); *Rodriguez Diaz v. Kaiser*, No. 3:25-cv-05071,

2025 U.S. Dist. LEXIS 113566, at *7–8 (N.D. Cal. June 14, 2025) ("[T]he government's interest in re-detaining Petitioner-Plaintiff without a hearing is low, particularly in light of the fact that Petitioner-Plaintiff has long complied with his reporting requirements." (internal quotation marks omitted)).

For these reasons, Petitioner is likely to succeed on his procedural due process claim.

### B. Irreparable Harm

Petitioner has established irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (citing *Hernandez*, 872 F.3d at 994). Given the Court's determination that Petitioner is likely to succeed on the merits of his due process claim and, thus, his present detention is likely unlawful, Petitioner faces irreparable harm absent injunctive relief.

### C. Balance of Equities and Public Interest

The last two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). "Because public interest concerns are implicated when a constitutional right has been violated, all citizens have a stake in upholding the Constitution, meaning it is always in the public interest to prevent the violation of a party's constitutional rights." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (cleaned up). The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Naturalization Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). "Faced with a choice 'between [minimally costly procedures] and preventable human suffering,' as discussed above, the Court concludes 'that the balance of hardships tips decidedly in [petitioner's]

favor." *Singh v. Andrews*, No. 1:25-cv-00801-KES-SKO (HC), 2025 U.S. Dist. LEXIS 132500, at *23 (E.D. Cal. July 11, 2025) (alterations in original) (quoting *Hernandez*, 872 F.3d at 996). These factors favor relief.

### D.  Summary

All factors strongly favor injunctive relief. The Court grants a preliminary injunction requiring Petitioner's forthwith release and enjoining Respondents from re-detaining him without providing him a pre-detention hearing.

The Court exercises its discretion not to require a security. Fed. R. Civ. P. 65(c); *see Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) ("Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." (internal quotation marks omitted)); *cf. Rodriguez-Flores v. Semaia*, No. CV 25-6900 JGB (JCx), 2025 U.S. Dist. LEXIS 192394, at *14 (C.D. Cal. Aug. 14, 2025) ("Due to the minimal harms suffered by the government, the Court will not require a security.").

///

## IV.  CONCLUSION

The Court grants the motion in substantial part. The Court issues a preliminary injunction as follows:

(1) Respondents shall release Petitioner from detention forthwith.

(2) Respondents and all of their officers, agents, servants, employees, attorneys, and persons acting on their behalf, in concert, or in participation with them are enjoined from re-detaining Petitioner without providing him a pre-detention hearing before a neutral adjudicator.

Pursuant to General Order No. 05-07, further proceedings on the merits of the petition are referred to the assigned magistrate judge.

**IT IS SO ORDERED.**

Dated: February 25, 2026

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE